_____

**SO ORDERED,**



*[signature]*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**
_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| IN RE: | **MEDPLUS URGENT CLINIC, LLC** | **CASE NO. 24-11163-SDM** |
| | **MEDEX, LLC** | **CASE NO. 24-11781-SDM** |
| | **DEBTORS** | **CHAPTER 11** |

### MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEBTORS' MOTION FOR RELIEF FROM AUTOMATIC STAY

The matters before the Court are the Motion for Relief from Stay Effective as of the Petition Date filed by MedPlus Urgent Clinic, LLC ("MedPlus") [Case No. 24-11163-SDM, Dkt. #340] and the Motion for Relief from Stay Effective as of the Petition Date filed by MedEx, LLC ("MedEx") [Case No. 24-11781-SDM, Dkt. #160] (collectively, the "Motions"). Karol B. Turner and M & K Equipment Rentals, LLC (collectively, the "Respondents") filed responses in opposition in both cases [Case No. 24-11163-SDM, Dkt. #356; Case No. 24-11781-SDM, Dkt. #165]. The Court held a hearing on April 21, 2026, at which counsel for the Debtors, counsel for John and Samantha Logan, and counsel for the Respondents presented argument.

The Motions ask the Court to grant relief from the automatic stay effective as of the applicable petition dates, thereby retroactively validating a dismissal order entered by the

Chancery Court of Lee County, Mississippi while the automatic stay was in effect. Alternatively, the record and arguments also raise whether prospective relief from stay should be granted so that the parties may proceed in state court generally, but mainly with the pending Rule 60 motion, appeal, severance issues, and related procedural matters.

For the reasons set forth below, the Court concludes that the request for retroactive relief or annulment of the automatic stay should be denied. As a result, the Dismissal Order remains ineffective as to MedPlus and MedEx to the extent the order was entered through continuation of proceedings as to the Debtors during the pendency of the automatic stay. The Court further concludes, however, that cause exists to lift the automatic stay prospectively to allow the parties to proceed in the Lee County Chancery Court and any related appellate proceedings. Accordingly, the Motions are granted in part and denied in part.

## I. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is proper in this District.

## II. BACKGROUND

These bankruptcy cases arise against the backdrop of several related state court disputes involving MedPlus, MedEx, John Logan, Samantha Logan, the Respondents, and other parties. The Court has already addressed portions of that broader litigation history in other orders and opinions. For purposes of the present Motions, the relevant dispute is the action pending in the Chancery Court of Lee County, Mississippi styled *Turner, et al. v. Logan, et al.*, Cause No. CV2020-1413-41-M (the "Lee County Action").

The Lee County Action was filed in 2020. MedPlus and MedEx were defendants in that action, along with other non-debtor defendants. The case was active for a short time after its filing and then experienced a lengthy period of inactivity. The parties dispute the cause and legal significance of that inactivity. The Debtors contend that the case became stale long before bankruptcy and that the state court would have dismissed it regardless of the later bankruptcy filings. The Respondents contend that the inactivity must be viewed considering related litigation, attempted settlement, the Lafayette County proceedings, and later the automatic stay.

MedPlus filed its Chapter 11 petition on April 23, 2024. MedPlus filed a suggestion of bankruptcy in the Lee County Action on April 29, 2024, notifying the state court and the parties that the automatic stay had been triggered. MedEx filed its Chapter 11 petition on June 21, 2024. The Respondents assert that MedEx did not promptly file a separate suggestion of bankruptcy in the Lee County Action, although the bankruptcy cases and stay issues were later known to the parties. On May 15, 2024, after MedPlus filed its suggestion of bankruptcy, MedPlus, MedEx, and the other Lee County defendants filed a motion to dismiss the Lee County Action for failure to prosecute under Mississippi Rule of Civil Procedure 41(b). The Respondents opposed dismissal on May 28, 2024. The Lee County defendants filed a reply on June 4, 2024. The motion then remained pending for more than a year.

On July 8, 2025, the Lee County Chancery Clerk filed a notice or motion concerning dismissal for lack of prosecution. The Respondents opposed dismissal and requested entry of a scheduling order, arguing that pending motions, pending bankruptcies, and the implications of the automatic stay constituted good cause for allowing the action to remain pending. On December 30, 2025, the Lee County Chancery Court entered an Opinion and Order of Dismissal (the "Dismissal Order"). The Dismissal Order granted the defendants' Rule 41(b) motion and granted

relief based on the Clerk's stale-case notice. The Dismissal Order focused primarily on the Respondents' lack of prosecution and found that dismissal was appropriate under Mississippi law. The Dismissal Order did not analyze the effect of the automatic stay or determine whether the state court could proceed to dismissal notwithstanding the bankruptcy cases.

After entry of the Dismissal Order, the Respondents filed a Rule 60 motion in the Lee County Action, arguing that the Dismissal Order should be set aside because it was entered in violation of the automatic stay. The Respondents also filed a notice of appeal. The Debtors then filed the present Motions, asking this Court to grant relief from the automatic stay effective as of the petition dates so that the Dismissal Order may be given full force and effect.

At the hearing, the Debtors argued that if cause ever existed to lift the stay, it exists here because the parties need the related state court litigation to move forward. Counsel emphasized that Judge Mask issued a detailed decision dismissing the Lee County Action and argued that retroactive relief is necessary to give that order effect. Counsel also argued that the Debtors believed in good faith that they could seek dismissal of claims against them for the benefit of the bankruptcy estates and that preserving the dismissal would reduce litigation expense.

The Respondents argued that the Debtors cannot knowingly participate in dismissal efforts in a stayed action, obtain a favorable ruling, and then seek retroactive relief only after the fact. The Respondents characterized the requested relief as an improper attempt to use the automatic stay as both shield and sword. They also argued that the Debtors had other options available, including seeking stay relief before filing or pursuing the dismissal motion, requesting severance, or seeking a comfort order from this Court. The Court now turns to the applicable law.

### III. DISCUSSION

**A. Scope and Purpose of the Automatic Stay**

The filing of a bankruptcy petition operates as a stay, applicable to all entities, of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor" that was or could have been commenced before the bankruptcy case. 11 U.S.C. § 362(a)(1). The stay arises automatically and immediately upon the filing of a bankruptcy petition. *In re Okedokun*, 593 B.R. 469, 525 (Bankr. S.D. Tex. 2018) (internal citations omitted). It protects the debtor by providing a breathing spell from litigation and collection efforts, but it also protects creditors by preventing piecemeal litigation and preserving the estate for orderly administration. *Matter of Cowin*, 864 F.3d 344, 352 (5th Cir. 2017) (internal citations omitted); see also, *Maritime Electric Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d. Cir. 1991) (explaining the automatic stay serves the interests of both debtors and creditors).

The automatic stay applies broadly. In *Pope v. Manville Forest Products Corp.*, the Fifth Circuit held that, absent relief from stay, a district court lacked authority to dismiss a pending Title VII action against a debtor. 788 F.2d 238, 239 (5th Cir. 1985). The Fifth Circuit stated that the case was required to remain pending until the bankruptcy court granted relief from the stay or the stay otherwise terminated. *Id*. The Court recognizes that *Pope* expressly limited its holding to the facts before it. *Id*. Nevertheless, *Pope* remains instructive because it reflects the Fifth Circuit's recognition that courts should proceed cautiously before taking dispositive action in litigation against a debtor where the applicability of § 362(a)(1) has not been resolved. The Court does not interpret *Pope* as announcing a categorical prohibition on all procedural activity in litigation involving a debtor. Rather, *Pope* reflects the Fifth Circuit's caution that dispositive action in

Page 5 of 22

litigation against a debtor may present significant stay concerns where relief from the automatic stay has not been obtained and the applicability of § 362(a)(1) remains unresolved.

The Fifth Circuit also applies a posture-at-inception rule to determine whether litigation is "against the debtor." *Freeman v. Commissioner*, 799 F.2d 1091, 1092-93 (5th Cir. 1986). In *Freeman*, the Fifth Circuit explained that whether a proceeding is "against the debtor" is determined by the posture of the case at its inception rather than from later procedural developments. *Id*. Thus, the fact that a debtor later takes defensive or affirmative action within the litigation does not necessarily alter the proceeding's original character as one commenced against the debtor. See *In re Edwin A. Epstein, Jr. Operating Co.*, 314 B.R. 591, 596-98 (Bankr. S.D. Tex. 2004) (rejecting debtor's attempt to treat its request for affirmative relief within an existing arbitration as outside the automatic stay).

The Lee County Action was filed against MedPlus and MedEx. It, therefore, was a proceeding against the Debtors for purposes of § 362(a)(1). That characterization did not change simply because the Debtors later sought dismissal of the claims asserted against them. The Debtors rely, at least in part, on cases recognizing that the stay does not apply to claims brought by a debtor. That principle is correct but does not resolve this matter. In *Carley Capital Group v. Fireman's Fund Insurance Co.*, the D.C. Circuit held that the automatic stay did not apply to an appeal in a case originally brought by the debtor because § 362(a)(1) stays actions against the debtor, not actions brought by the debtor that would benefit the estate. 889 F.2d 1126, 1127 (D.C. Cir. 1989). Similarly, *Maritime Electric Co.* recognized that, in multi-party and multi-claim litigation, courts must disaggregate claims and determine which claims are against the debtor and which are brought by the debtor or non-debtors. 959 F.2d at 1204-5.

Those authorities do not help the Debtors as much as they suggest. *Carley* involved litigation originally filed by the debtor. *Maritime Electric* supports careful claim-by-claim analysis, but it also emphasizes that proceedings against the debtor are stayed and that the effect of the stay does not depend on whether the nonbankruptcy court rules for or against the debtor. 959 F.2d at 1206. Here, the relevant claims were asserted against MedPlus and MedEx. The Debtors were not prosecuting independent claims for affirmative recovery. They were seeking dismissal of claims brought against them in a prepetition action. The Court, therefore, concludes that the Lee County Action was a proceeding against MedPlus and MedEx for purposes of § 362(a)(1) and remained subject to the automatic stay notwithstanding the Debtors' later defensive litigation activity within that proceeding.

**B. Whether the Dismissal Activity Implicated the Stay**

The next question is whether the postpetition pursuit and adjudication of the contested dismissal under Rule 41(b) of the Mississippi Rules of Civil Procedure constituted continuation of a judicial proceeding against the Debtors within the meaning of § 362(a)(1). The Debtors argue that the dismissal of claims against them benefited the bankruptcy estates, reduced litigation expenses, and furthered efficient administration. They also argue that defendants commonly defend themselves in litigation and that a dismissal of claims against a debtor is different from collection activity against estate property.

The Court does not disagree that dismissal of claims against a debtor can benefit the bankruptcy estate. Nor does the Court suggest that a debtor is powerless to defend itself in all circumstances. The question here is narrower: whether the Debtors could affirmatively seek and obtain dispositive relief in a prepetition action against them while the automatic stay was in place, without first obtaining relief from the bankruptcy court.

The Court does not hold that every defensive litigation act taken by a debtor in pending litigation violates § 362(a)(1). Debtors necessarily must respond to litigation in various procedural contexts, and courts have recognized limited circumstances in which certain administrative or procedural actions may proceed notwithstanding the stay. Under the unusual posture presented here, however, the Court concludes that the Debtors' affirmative pursuit of contested Rule 41(b) dismissal relief in litigation originally commenced against them constituted continuation of a judicial proceeding against the Debtors within the meaning of § 362(a)(1). The Debtors and co-defendants sought adjudication and termination of claims pending against the Debtors in stayed litigation without first obtaining relief from the stay or clarification regarding the stay's applicability. The Court does not hold that every defensive act by a debtor in pending litigation violates the automatic stay, nor that every procedural dismissal entered postpetition is prohibited. The Court holds only that the particular dismissal activity pursued here sufficiently continued the adjudication of claims against the Debtors to require prior stay relief or clarification before proceeding.

The Debtors and interested parties point to authorities from other circuits recognizing a limited ability of courts to manage their dockets notwithstanding the stay. The Court has considered those cases but notes that they are not controlling here. In *Dennis v. A.H. Robins Co.*, the Eighth Circuit held that a district court was not prevented by the stay from dismissing a case on its docket for failure to comply with court orders, reasoning that a bankruptcy court cannot prevent another court from handling its docket in a manner not inconsistent with the purposes of the stay. 860 F.2d 871, 872 (8th Cir. 1988). In *O'Donnell v. Vencor Inc.*, the Ninth Circuit held that a Rule 41(b) dismissal for failure to prosecute did not violate the stay where the dismissal was

procedural, not merits-based, and did not threaten the debtor, the estate, or creditor equality. 466 F.3d 1104, 1110-11 (9th Cir. 2006).

Those cases identify an important and practical principle in that the automatic stay should not always prevent a court from taking purely administrative or ministerial docket-management actions. But those cases arose in materially different contexts involving court-driven procedural dismissals arising from failures to comply with court orders, deadlines, or other litigation obligations. Here, by contrast, the postpetition dismissal proceedings arose from a contested motion affirmatively pursued by the Debtors and their co-defendants after bankruptcy filings had already occurred and after at least one suggestion of bankruptcy had been filed in the Lee County Chancery Court. The Dismissal Order did not merely clear an inactive matter from the docket through administrative action. It expressly addressed the Debtors' and co-defendants' Rule 41(b) motion, analyzed the parties' litigation history, and adjudicated the continued viability of claims pending against the Debtors. Moreover, unlike the authorities discussed above, neither *Dennis* nor *O'Donnell* involved the particular posture presented here, where debtors in litigation originally commenced against them affirmatively sought contested dispositive relief and later requested retroactive validation of that relief after stay concerns were raised. Nor do these cases involve purely ministerial action taken independently by the state court clerk or court without substantive adjudication.

The Fifth Circuit's decision in *Arnold v. Garlock Inc*. also does not require a different result. In *Arnold*, the Fifth Circuit held that district courts could grant plaintiffs' voluntary dismissals of bankrupt defendants under Rule 41(a), reasoning that such dismissals reduced litigation against the debtor, and were consistent with the automatic stay and effective docket management. 288 F.3d 234, 236-37 (5th Cir. 2002). Unlike *Arnold*, this case does not involve a plaintiff's unilateral

abandonment of claims against the Debtors. The Dismissal Order instead required adjudicative action by the state court concerning the continued viability of claims pending against the Debtors after bankruptcy filings had occurred. Here, the Debtors themselves affirmatively pursued a contested dismissal and later sought retroactive validation of that dismissal after the Respondents challenged the order on stay grounds.

The distinction is important. A voluntary dismissal by a plaintiff can reduce litigation pressure on the debtor and may be consistent with the purposes of the stay. A debtor's postpetition motion asking a state court to adjudicate and dismiss claims asserted against it presents a different posture. Again, the Court need not hold that every defensive step taken by a debtor in a stayed case is prohibited. But under the facts here, the pursuit and entry of the Dismissal Order at minimum implicated substantial automatic stay concerns under § 362(a)(1). Accordingly, the Court concludes that the postpetition dismissal activity in the Lee County Action, at least as to MedPlus and MedEx, implicated and violated the automatic stay under the circumstances presented.

## C. Effect of a Stay Violation in the Fifth Circuit: Void or Voidable

The parties also dispute the effect of any stay violation. This Court recently addressed the distinction between "void" and "voidable" in *In re Hood*, No. 16-14511-SDM, 2022 WL 1791063, at *10 (Bankr. N.D. Miss. June 1, 2022). There, this Court explained that, in the Fifth Circuit, actions taken in violation of the automatic stay are voidable, not void. *Id.* (citing, *In re Dillon*, 619 B.R. 357, 362 (Bankr. S.D. Miss. 2020) and *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989)).

The Fifth Circuit's decisions in *Sikes*, 881 F.2d at 178-79, and *Picco v. Global Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990), establish that principle. In *Sikes*, the Fifth Circuit held that acts taken in violation of the automatic stay are capable of discretionary cure because § 362(d)

authorizes a bankruptcy court to annul the stay. *Sikes*, 881 F.2d at 178.  In *Picco*, the Fifth Circuit again recognized that actions taken in violation of the stay are voidable rather than void and that a later stay-relief order may cure the defect. *Picco*, 900 F.2d at 850.

The Court's *Hood* opinion explained the distinction this way: a void act is nugatory and cannot be cured, while a voidable act is invalid when taken but may later be validated by subsequent judicial action. *Hood*, 2022 WL 1791063, at *10 (citing *Sikes*, 881 F.2d at 178). Put another way, an act taken in violation of the stay is ineffective unless and until the bankruptcy court validates it through annulment. That is the proper lens here. Because the Court concludes that the Dismissal Order was entered through proceedings conducted in violation of the automatic stay as to MedPlus and MedEx, the Dismissal Order is ineffective as to those Debtors unless and until validated through retroactive relief under § 362(d). The Court's ruling is limited to the bankruptcy effect of the automatic stay as it applies to the Debtors and does not adjudicate the procedural or substantive effect of the Dismissal Order as to non-debtor parties.

## D. Authority to Annul the Stay

Section 362(d) provides that, on request of a party in interest and after notice and a hearing, the Court may grant relief from the stay by "terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. § 362(d). The inclusion of the word "annulling" gives the bankruptcy court authority to grant retroactive relief from the stay. *Sikes*, 881 F.2d at 178; *Picco*, 900 F.2d at 850.

Nevertheless, the existence of that power does not mean it should be exercised routinely or automatically whenever litigation activity occurs while stay questions remain unresolved. Annulment is an equitable remedy committed to the bankruptcy court's discretion. *In re Cueva*, 371 F.3d 232, 236 (5th Cir. 2004). The Fifth Circuit has repeatedly recognized that bankruptcy courts possess authority to grant retroactive stay relief where equity and cause warrant such relief.

See *Sikes*, 881 F.2d at 178-79; *Picco*, 900 F.2d at 850. At the same time, courts applying Fifth Circuit law have cautioned that the discretion to retroactively validate actions taken in violation of the stay should be exercised sparingly because of the potential prejudice to parties who honored the stay and the importance of preserving the orderly administration purposes underlying § 362. See *In re Brown*, 178 Fed. Appx. 409, 410 (5th Cir. 2006); *In re Jackson*, 392 B.R. 666, 671 (Bankr. S.D. Miss. 2008); and *In re Thornburg*, 277 B.R. 719, 731 (Bankr. E.D. Tex. 2002). Rather, the decision requires a fact-specific equitable inquiry considering the totality of circumstances.

Although the Fifth Circuit has not articulated a rigid multi-factor test governing annulment, bankruptcy courts within this Circuit have recognized that annulment under § 362(d) requires a flexible equitable analysis based on the particular facts presented. See *Jackson*, 392 B.R. at 671-72. Courts considering whether retroactive relief is appropriate generally consider factors such as whether the parties had knowledge of the bankruptcy, whether the debtor or movant engaged in inequitable conduct, whether relief from stay likely would have been granted if requested prospectively, whether parties proceeded notwithstanding unresolved stay concerns, whether retroactive relief would prejudice other parties, and whether annulment would further or undermine the purposes of the automatic stay. *Id*.; see also *In re Fjeldsted*, 293 B.R. 12, 24 (9th Cir. BAP 2003) (listing twelve factors bankruptcy courts might consider in determining whether annulment is appropriate); 3 COLLIER ON BANKRUPTCY, ¶ 362.12[1] (16th ed. 2026) ("[R]etroactive relief should be granted only in extraordinary circumstances, such as when a creditor acted without knowledge of the stay, under circumstances in which relief from the stay would have been available, and where the creditor changed its position in reliance on the validity of its action."). These considerations are not a scorecard or mandatory checklist but instead provide a framework for equitable analysis under the particular facts presented here.

*Matter of Pinetree, Ltd.*, illustrates circumstances where annulment may be appropriate. There, the Fifth Circuit concluded that a mortgagee's foreclosure should not be nullified where the mortgagee lacked notice of the debtor's unrecorded interest and the debtor failed to assert its status before foreclosure. 876 F.2d 34, 37 (5th Cir. 1989). The Fifth Circuit held that the stay should be annulled with respect to the postpetition foreclosure. *Id*. *Pinetree* is materially different from the circumstances presented in this case. Here, the Debtors unquestionably had knowledge of their own bankruptcy cases and of the automatic stay, and MedPlus filed a suggestion of bankruptcy in the Lee County Action before the dismissal motion was pursued.

*In re Edwin A. Epstein, Jr. Operating Co., Inc.*, provides a more useful comparison. In that case, the bankruptcy court refused to annul the stay to validate an arbitration panel's postpetition action taken at the debtor's request. 314 B.R. 591, 602-03 (Bankr. S.D. Tex. 2004). The court emphasized that while stay violations may be voidable in the Fifth Circuit, no one has a right to rely on an act taken in violation of the stay unless and until it is validated by court action. *Id*. at 601. The court further concluded that retroactive relief would be inequitable where it would prejudice a party that had respected the stay. *Id*. at 602.

More recently, in *McConathy v. Foundation Energy Fund IV-A, L.P.*, the Fifth Circuit reaffirmed that actions taken in violation of the stay are voidable rather than automatically void and that bankruptcy courts have power to retroactively validate stay violations where equity warrants. 111 F.4th 574, 585-86. The Fifth Circuit also emphasized the bankruptcy court's flexibility to modify or condition the stay as circumstances change and to allow litigation outside bankruptcy to proceed where doing so no longer threatens estate administration. *Id*. at 584. *McConathy* supports the Court's authority to fashion practical relief, but it does not compel retroactive annulment under the facts presented here.

**E. Whether Retroactive Relief is Warranted**

The Debtors argue that cause exists for retroactive relief because the Lee County Action had been pending since 2020, had experienced long periods of inactivity, and was dismissed by a state court familiar with the record. The Debtors further argue that the dismissal benefits the estates by reducing litigation expense and moving at least one piece of the parties' broader disputes toward finality. At the hearing, counsel emphasized that the Debtors believed dismissal could be pursued in good faith for the benefit of the estates and that some relief is necessary to get the state court cases moving.

The Court acknowledges the force of these arguments. The Lee County Dismissal Order was not a perfunctory or purely ministerial order. It was a reasoned ruling addressing the state court's view that the case had gone stale. The Dismissal Order appears to rest significantly on prepetition inactivity and procedural history predating the bankruptcy filings. In other words, the state court may well have reached the same result had the parties first sought clarification regarding the stay or obtained prospective relief before pursuing dismissal. That point weighs in favor of annulment. The automatic stay should not be applied in an overly rigid or mechanical manner divorced from practical reality, and there is some force to the argument that retroactive relief here would avoid elevating form over substance.

Even so, the Court must consider more than the likely substantive outcome. The automatic stay is not merely a procedural technicality. It serves important functions in bankruptcy administration by pausing litigation against the debtor and requiring parties to obtain appropriate relief or clarification before proceeding in nonbankruptcy forums. See *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012); and *Pursue Energy Corp. v. Mississippi State Tax Comm'n.*, 338 B.R. 283, 290-91 (S.D. Miss. 2005). The orderly administration purposes of the

Page 14 of 22

stay would be substantially weakened if parties could proceed with contested litigation activity while stay applicability remained unresolved and seek retroactive validation after adjudicative relief has already been obtained. The orderly administration purposes of § 362 are best served when parties seek relief from stay or clarification regarding the stay's applicability before proceeding with contested adjudicative activity affecting claims against a debtor. Retroactive annulment under the circumstances presented here would risk encouraging parties to proceed first and seek validation only after a favorable result has been obtained.

At the same time, the procedural uncertainty surrounding the automatic stay was not created solely by the Debtors. The Respondents likewise did not seek stay relief or a determination from this Court before continuing to litigate in the Lee County Action, opposing dismissal on the merits, filing post-dismissal Rule 60 motions, and pursuing appellate relief. Nor does the record reflect that either side squarely presented the stay issue to the Lee County Chancery Court before entry of the Dismissal Order. The Court does not view this matter as involving one-sided disregard of the automatic stay. Even so, the present Motions seek affirmative retroactive validation of postpetition dismissal activity undertaken without prior stay relief or clarification. That procedural posture distinguishes the relief presently requested from the Respondents' later defensive efforts to challenge the Dismissal Order after its entry.

The timing and posture of the request for retroactive relief also weighs against annulment. The Debtors did not seek stay relief before filing or pursuing the dismissal motion, nor did they seek a comfort order from this Court regarding whether the contemplated dismissal motion implicated the stay. Instead, the Debtors sought retroactive relief only after obtaining a favorable ruling and after the Respondents filed a Rule 60 motion and appeal challenging the Dismissal Order on stay grounds.

The Court does not find it necessary to characterize the conduct of either side as being undertaken in bad faith. The record reflects legitimate pressures, including significant litigation expense, overlapping state court disputes, and the need to move long-pending litigation toward finality. At the same time, equitable relief under § 362(d) requires more than a showing that the ultimate result may have benefited the estate or promoted efficiency. The Court must also consider whether the requested relief under the circumstances presented would undermine the integrity of the automatic stay.

On balance, the Court concludes it would. Granting retroactive annulment here would validate contested litigation conduct undertaken with knowledge of the bankruptcy cases and without prior stay relief or clarification from the Court. It would also materially prejudice the Respondents by eliminating their stay-based challenge to the Dismissal Order after they raised that issue through Rule 60 and appeal. The Respondents may or may not ultimately prevail in state court, and this Court expresses no view regarding which party held the better interpretation of the stay prior to this ruling. But retroactive annulment here would effectively decide one of the Respondent's principal procedural arguments after the fact.

The availability of alternatives also weighs against annulment. The Debtors could have sought stay relief or clarification before pursuing dismissal. The parties could have asked this Court to determine whether the stay applied. The parties also could have requested severance of the debtor and non-debtor parties in the Lee County Action before dispositive relief was pursued, although the Court recognizes the parties dispute whether severance would have been practical given the intertwined nature of the claims and parties. Under the particular facts presented here, the Court concludes that retroactive relief is not warranted.

**F. The Symmetry Problem and Prospective Relief**

Although the Court denies retroactive relief, that conclusion does not end the matter. The denial of retroactive relief does not necessarily mean that continued prospective application of the stay remains appropriate. The question whether parties should have obtained stay relief or clarification before proceeding is distinct from the question whether continued enforcement of the stay now serves a meaningful bankruptcy purpose. Those issues must be evaluated based on the procedural posture of the Lee County Action.

The current posture creates a symmetry problem. If the automatic stay barred the Debtors from pursuing dismissal of claims against MedPlus and MedEx, then the stay also likely affects the Respondents' efforts to prosecute a Rule 60 motion and appeal concerning those same claims against the Debtors. The stay applies to the continuation of judicial proceedings against the Debtors.[1] It does not apply only when the action is harmful to the debtor or only when the debtor invokes it. Courts interpreting § 362(a) have repeatedly recognized that the stay's application does not depend on whether the continuation of litigation ultimately benefits or harms the debtor. See *Pope v. Manville Forest Prods. Corp.*, 778 F.2d 238, 239 (5th Cir. 1985) (holding district court lacked authority to dismiss stayed action against debtor absent relief from stay); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-06 (3d. Cir. 1991) (explaining the automatic stay applies to proceedings against the debtor regardless of whether continuation of the litigation might

---

[1] These are Chapter 11 cases, not Chapter 13 cases, and § 1301's co-debtor stay therefore does not apply. See 11 U.S.C. § 1301. Moreover, the automatic stay generally does not extend automatically to non-debtor co-defendants merely because they are factually or legally related to the debtor. See *McConathy v. Foundation Energy Fund IV-A, L.P.*, 111 F.4th 574, 581-82 (5th Cir. 2024); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205-06 (3d Cir. 1991); *Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 n.4 (5th Cir. 1986). Accordingly, to the extent the Lee County Dismissal Order affected claims involving non-debtor parties, the bankruptcy consequences of the stay may differ as between the Debtors and the non-debtor litigants.

benefit the debtor); and *In re Edwin A. Epstein, Jr. Operating Co.*, 314 B.R. 591, 597-98 (Bankr. S.D. Tex. 2004) (rejecting debtor's argument that stay did not apply because the proceedings allegedly could not negatively affect the estate).

Importantly, that procedural asymmetry cuts both ways. Just as the Debtors did not seek stay relief or clarification before pursuing dismissal, the Respondents likewise continued litigation in the Lee County Action without first obtaining relief or clarification regarding how the automatic stay affected the Rule 60 motion, appeal, and related litigation activity. The Court therefore declines to interpret § 362(a)(1) in a manner that would permit one side to obtain adjudicative relief in a stayed proceeding while simultaneously preventing the opposing parties from seeking clarification or review of that same relief.

This issue was raised at the hearing. Counsel for the Debtors argued that, if the automatic stay remains in place, the Respondents' Rule 60 motion and appeal are likewise problematic because they are efforts to continue litigation against the Debtors. The Respondents acknowledge that stay relief may be necessary to proceed with the Rule 60 motion, appeal, and related state court proceedings.

The Court agrees that prospective relief is appropriate. Unlike retroactive relief, prospective relief does not validate past conduct or resolve disputed stay issues after the fact. It simply permits the parties to proceed from this point forward in the proper forum. The Lee County Chancery Court and, if necessary, the Mississippi appellate courts are best positioned to determine the status and effect of the Dismissal Order considering this Court's opinion and order, as well as the Rule 60 motion, severance, and any appeal.

Cause also exists for prospective relief from the automatic stay. The Lee County Action involves primarily state law issues among multiple parties, including non-debtors. This Court has

already recognized in related proceedings that the underlying state law issues are more appropriately resolved by the state court system before this Court addresses any resulting bankruptcy consequences. Continued blanket application of the automatic stay to prevent any further state court activity would not promote efficient administration of these bankruptcy cases. It would instead risk procedural paralysis and unnecessarily prevent the state courts from resolving issues uniquely governed by state law. Prospective relief also appropriately respects principles of comity by permitting the Mississippi courts to address the procedural effect of their own orders and related state-law procedural issues within the pending appellate and Rule 60 proceedings. Allowing the state courts to proceed also avoids requiring this Court to adjudicate issues of Mississippi procedural law more appropriately addressed within the state appellate process.

*McConathy v. Foundation Energy Fund IV-A, L.P.*, supports this practical approach. There, the Fifth Circuit emphasized that bankruptcy courts retain flexibility to modify or condition the stay as circumstances change and that relief from the stay may become appropriate when the factual or legal landscape materially changes. 111 F.4th at 581, 584 (5th Cir. 2024). The court further recognized that the automatic stay is not intended to operate as a permanent bar to litigation and approved the bankruptcy court's decision to allow related state court litigation to proceed once doing so no longer threatened the administration of the estate. *Id*. at 584-86.

That flexibility is important here. Prospective relief appropriately balances the competing interests implicated in this dispute. Refusing retroactive annulment preserves the principle that parties ordinarily should obtain relief from stay or clarification before proceeding with litigation activity implicating § 362(a)(1). At the same time, prospective modification recognizes that continued blanket application of the stay no longer serves a meaningful bankruptcy purpose and instead risks preventing the orderly resolution of the related state court proceedings. As

*McConathy* reflects, bankruptcy courts may appropriately modify or condition the stay to permit litigation in nonbankruptcy forums to proceed when doing so no longer threatens estate administration or undermines the protections afforded by § 362.

The Court will, therefore, terminate and lift the automatic stay prospectively to permit the parties to proceed with the Lee County Action and any related appellate proceedings.

**G. Effect of This Ruling**

This ruling is intentionally narrow. The Court determines only the effect of the automatic stay under § 362(a)(1) as it applies to MedPlus and MedEx. Because the Court declines to annul the stay retroactively, the Lee County Dismissal Order remains ineffective as to the Debtors unless and until otherwise validated through appropriate bankruptcy relief. The Court does not determine the procedural or substantive effect of the Dismissal Order under Mississippi law, nor does it determine the effect of the Dismissal Order as to non-debtor parties.

The Court's ruling is limited to the effect of § 362(a)(1) as it applies to MedPlus and MedEx under the procedural posture presented here. The Court concludes that the postpetition dismissal proceedings implicated and violated the automatic stay as to the Debtors and that retroactive annulment is not warranted. The Court expresses no opinion regarding the ultimate procedural or substantive effect of the Dismissal Order under Mississippi law or as to non-debtor parties.

The Court also does not decide whether any party is entitled to sanctions, damages, or other relief arising from an alleged violation of the automatic stay. No motion seeking such relief is presently before the Court in this contested matter. The issue here is limited to whether the stay should be annulled retroactively or modified/lifted prospectively under § 362(d).

The Court simply holds that retroactive annulment is not warranted based on the circumstances before it, but prospective relief is warranted to allow the state courts to proceed

from this point forward. The Court's ruling is confined to the unusual procedural posture presented

here and should not be construed as establishing a categorical prohibition on all defensive litigation

conduct undertaken by debtors in pending nonbankruptcy proceedings.

### IV. CONCLUSION

The automatic stay is one of the fundamental protections of the Bankruptcy Code. It is

broad, immediate, and applies to all entities. At the same time, the Fifth Circuit treats actions taken

in violation of the stay as voidable rather than void, meaning that a bankruptcy may grant

retroactive relief under § 362(d) where cause and equity warrant.

This is not, however, an appropriate case for annulment. Under the circumstances presented

here, retroactive validation of the dismissal activity would not appropriately serve the purposes

underlying § 362. At the same time, continued application of the stay going forward would create

unnecessary delay, procedural uncertainty, and continued impediments to resolution of the Lee

County Action. The Court's ruling preserves the integrity of the automatic stay by declining to

retroactively validate contested litigation activity undertaken without prior relief from stay while

also recognizing that continued prospective application of the stay no longer serves the interests

of efficient administration or orderly adjudication.

Accordingly, it is hereby **ORDERED**:

1. The Motions are **GRANTED IN PART** and **DENIED IN PART**.

2. The Debtors' request for relief from the automatic stay effective as of the petition date is
   **DENIED**.

3. The automatic stay is terminated and lifted prospectively as of the date of entry of this
   Order to permit the parties to proceed with the Lee County Action and any related appellate
   proceedings.

4.  Nothing in this Order shall be construed as a determination regarding the procedural or substantive validity of the Lee County Dismissal Order under Mississippi law or as to non-debtor parties.

5.  Nothing in this Order shall be construed as a determination that any party has or has not committed a sanctionable violation of the automatic stay.

##END OF ORDER##